UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACK A. PRZYBYLSKI,

    Plaintiff,

  v.                                                     Case No. 18-CV-996

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

    Jack A. Przybylski, who is representing himself in this appeal, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

    Przybylski filed applications for a period of disability and disability insurance benefits and for supplemental security income alleging disability beginning on December 1, 2010. (Tr. 217, 219.) Przybylski's applications were denied initially and upon reconsideration. (Tr. 79–80, 100–01.) A hearing was held before an Administrative Law Judge (ALJ) on January 31, 2017. (Tr. 37–78.) Przybylski testified at the hearing, as did a vocational expert. (*Id.*)

    In a written decision issued July 27, 2017, the ALJ found that Przybylski had the severe impairments of coronary artery disease, status post stenting; left ankle fracture, status-

post open reduction internal fixation (ORIF); obesity; and right knee degenerative joint disease. (Tr. 22.) The ALJ found that Przybylski had the non-severe impairments of hypertension, hyperlipidemia, gastroesophogeal reflux disease, restless leg syndrome, anxiety, and depression. (Tr. 23.) The ALJ found that Przybylski did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 24.) The ALJ found that Przybylski had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs and can frequently balance; and he can tolerate occasional exposure to hazards, such as moving machinery and unprotected heights. (Tr. 24–25.)

The ALJ found Przybylski capable of performing his past relevant work as a chauffeur driver and as an office machine servicer. (Tr. 29.) The ALJ alternatively found that given Przybylski's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could also perform. (Tr. 31.) As such, the ALJ found that Przybylski was not disabled from the alleged onset date until the date of the decision. (Tr. 31.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the Przybylski's request for review. (Tr. 1–3.)

## APPLICABLE LEGAL STANDARDS

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Przybylski argues that the denial of his applications should be reversed for four reasons: (1) he is unable to work due to his symptoms; (2) the decision was based on inaccurate information; (3) his doctors were unwilling to cooperate in his applications; and (4) his representation by counsel at the administrative level was inadequate. (Docket # 18.) I will address each argument in turn.

   1.   *Evaluation of Subjective Complaints*

Pryzbylski argues that the ALJ's decision is erroneous because he is, in fact, unable to work due to severe pain in his left foot combined with problems with his right knee and wrist. (Docket # 18 at 5–6.) I construe this as a challenge to the ALJ's finding that Pryzyblski's

3

allegations about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence.

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.* While an ALJ "may discount subjective complaints of pain that are inconsistent with the evidence as a whole . . . the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The lack of objective medical evidence is merely one factor to consider, along with the other factors listed in SSR 16-3p. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v.*

*Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citations omitted).

In an Adult Function Report dated November 16, 2014, Przybylski stated that he had had three heart attacks due to coronary artery disease, limited use of his right wrist due to injury, limited use of his right knee due to injury, and limited use of his left heel/ankle due to injury and plate installation. (Tr. 252.) Przybylski stated that he spent his days trying to keep the house clean, trying to take a few short walks if his knee feels good, and trying to figure out what to do financially. (Tr. 253.) He stated that he could do everything, but slower and in smaller amounts, for periods of time between five and ten minutes. (Tr. 253, 260.) He stated that his left foot and right knee were very uncomfortable during the night and affect his sleep. (Tr. 253.) He averred that he had no problem with personal care and prepared his own simple meals daily that took ten to twenty minutes to prepare. (Tr. 253–54.) Przybylski stated that he could still perform household chores, but at a much slower pace, taking about twice as long as before. (Tr. 254.) He averred that he went outside daily and could walk, use a car, leave the house alone, shop normally at one store per day, and pay bills and count change. (Tr. 255.) Pryzbylski stated that his hobbies included watching TV, reading magazines, playing music, and photography. (Tr. 256.) He did these things often, as long as he took his time and stopped when needed, and his conditions resulted in these activities taking longer than before. (*Id.*) Przybylski stated that he spent time with his family and friends often at their homes, but would sometimes cancel plans when his injuries acted up. (Tr. 256–57.) He stated that his injuries affected his ability to lift, stand, walk, sit, kneel, climb stairs, and use his

5

hands. (Tr. 257.) He explained that could lift with his right hand, but if he did too much it would hurt for a few hours, and that his right knee and left foot cause the other named tasks to be done more slowly and carefully. (*Id.*) Przybylski stated that he could sit for ten to fifteen minutes, stand for fifteen to twenty minutes, and walk for ten to fifteen minutes. (Tr. 260.) Przybylski stated that after walking for ten minutes he needed to stop and rest for fifteen minutes, and explained that if he walked too much, his knee would pop and then need eight hours of rest. (Tr. 257) He claimed to be able to sit for four hours per day, stand for two hours per day, and walk for one hour per day. (Tr. 260.) He stated that his ability to handle stress was limited, as all three of his heart attacks happened in stressful situations. (Tr. 258.) He averred that he used crutches and a brace/splint, prescribed in September 2013 when he had his foot surgery, only when he pushed his knee or ankle too much. (*Id.*) Przybylski explained that his physical injuries did not cause too many problems by themselves, but combined they caused problems functioning normally. (Tr. 259.) He claimed that he lost previous jobs because of his knee and wrist injury and his heart attack, but admitted that they never told him that was why he was let go. (Tr. 260.)

In an Adult Function Report dated January 14, 2015, Przybylski repeated that he had limited use of his right wrist and knee, limited use of his left foot due to a plate, and stress-related heart attacks. (Tr. 265.) He stated that he spent his days just trying to get through the day, and could do everything but was limited as to duration. (Tr. 266.) Przybylski averred that pain and numbness in his left foot affected his sleep. (*Id.*) Przybylski stated that he could perform personal care, prepare simple meals taking fifteen to twenty minutes to prepare, and do household chores in short periods. (Tr. 266–67.) He indicated that he went outside daily by car, but not walking, and went shopping once a week for about an hour. (Tr. 268.) He

enjoyed TV and photography when he got a chance, but activities had become harder and slower since his injuries. (Tr. 269.) He got together with friends and spent time with his kids often, but less since his injuries. (Tr. 269–70.) Przybylski stated that his injuries affected lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, and using his hands. (Tr. 270.) He explained that he could do all these, but at a slower and more careful pace. (*Id.*) He stated that he could walk for five to ten minutes before needing to stop and rest for fifteen to twenty minutes; if his knee popped, he needed twelve hours of rest. (*Id.*) Przybylski stated that he handled stress badly; having had three heart attacks during stressful times, he sometimes panicked when stressed. (Tr. 271.) He indicated that he used crutches and a brace/splint. (*Id.*)

At a hearing before the ALJ on January 31, 2017, Przybylski testified that he has not had significant cardiac symptoms since his last of three heart attacks, in September 2013, although he went to the emergency room once in August 2015 for an elevated heart rate. (Tr. 52.) He testified that the biggest problem with his heart is that all three heart attacks were in stressful situations, and that he thinks stressful situations in the workplace such as unhappy customers would cause him to have cardiac symptoms. (Tr. 52–53.) Regarding his ankle, Przybylski testified that he experiences pain in the middle of the foot such that he can walk for ten or maybe fifteen minutes before needing to rest. (Tr. 54–55.) If he spends an hour on his feet, the rest of that night and the next day he will be in pain. (Tr. 55.) He describes it as a stabbing pain. (*Id.*) Przybylski also explained that the left ankle pain is aggravating the old injury in his right knee because he is using the right leg more to compensate for the pain on the left. (Tr. 55–56.) When he puts too much weight on the right knee, he hears a pop and then he has to ice it for a couple of hours. (Tr. 56.) Przybylski testified that he gets restless legs

7

sometimes when sitting, so he needs to get up and walk for a few minutes about every twenty or twenty-five minutes. (Tr. 57.) He stated that he can lift and carry fifty or sixty pounds, probably more, with his left arm but not his right arm due to the previous wrist injury. (Tr. 57–58.) Przybylski testified that his wrist does not generally bother him unless he lifts something too heavy. (Tr. 66–67.) Przybylski testified that he takes Norco for pain a couple of times per week when he has to exert himself, for example to go shopping. (Tr. 58–59.) Przybylski stated that he gets ankle swelling that he manages by elevating the foot and taking water pills. (Tr. 59.) This occurs once or twice a week, or more if he walks quite a bit. (Tr. 60.)

At the hearing, Przybylski also testified that he spends his days occasionally watching his ex-girlfriend's fourteen-year-old child with autism after school or on weekends in exchange for rides because he does not have a car. (Tr. 60.) He testified that he does his own laundry and cleaning up after cooking. (Tr. 61.) He stated that he gets out of the house regularly only for doctor's appointments, and occasionally borrows his ex-girlfriend's car to drive his son to work or to pick him up. (*Id.*)

In his decision, the ALJ found that Przybylski's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 25.) However, he found Przybylski's statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) After reviewing the medical records (Tr. 26–28), the ALJ explained that imaging studies indicated good positioning of the instrumentation in Przybylski's ankle and only mild degenerative changes in his right knee; his heart disease has been generally stable for several years; his heart rate and rhythm are normal; he has 5/5 strength, a full range of motion, and

intact sensation in his extremities; his current treatment is conservative; his symptoms are managed on medication; and the record does not indicate he has to elevate his ankle as alleged at his hearing. (Tr. 28.) The ALJ also pointed to Przybylski's daily activities, namely that he lives independently, performs self-care and household chores, occasionally cares for a teenager with autism, enjoys reading, and was looking for a job in October 2016. (Tr. 28.)

Disregarding Przybylski's subjective complaints on this basis is reversible error. First, the ALJ does not provide a logical bridge between the evidence he cites and his apparent conclusion that Przybylski was exaggerating his symptoms. To take a simple example, Przybylski testified that he experiences pain in his left foot such that he can walk for ten or maybe fifteen minutes before needing to rest; if he is on his feet for an hour, he will experience pain all night and the next day. (Tr. 54–55.) None of the evidence the ALJ cites is logically inconsistent with pain or limited tolerance for walking, and the ALJ does not otherwise explain how the evidence undermines Przybylski's claims about his pain.

Furthermore, the ALJ cherry-picks the record, failing to mention medical evidence that *is* consistent with Przybylski's statements about his symptoms. For example, the orthopedic surgeon who performed the surgery to repair Przybylski's fractured ankle in 2013 warned him that one of the risks of the surgery would be "painful hardware" and "persistent pain and stiffness despite surgery." (Tr. 362.) On June 17, 2016, Przybylski told his primary care provider, Dr. Shashi Bhushan, that he was having increased pain in the left foot with too much walking. (Tr. 539.) Dr. Bhushan noted that Przybylski had a plate in his foot and ascribed the pain to "DJD/postsurgical" and prescribed Hydrocodone as needed for severe pain. (Tr. 539, 542.) Again in July 6, 2016, Przybylski reported that his left foot hurt him "all

9

the time," and Dr. Bhushan recommended Hydrocodone when the pain was severe. (Tr. 543, 546.) These supporting records went unnoted by the ALJ.

In sum, the ALJ does not provide a coherent rationale for dismissing Przybylski's allegations of left foot pain and associated limitations, warranting reversal and remand.

### 2. *Other Alleged Errors*

Because the case is being reversed and remanded on other grounds, I need not address Przybylski's other arguments. However, as Przybylski is representing himself, I will do so briefly in order to assure him that his concerns have been considered and to provide guidance to the Agency on remand where appropriate.

#### 2.1. Inaccurate Information

Przybylski argues that the ALJ's decision is based on inaccurate information, including: (1) that he still chooses to smoke, when in fact he does not; (2) that his foot seemed to be healing with little pain after foot surgery because he reported that his pain was at 2 out of 10, when he was on Oxycontin at the time to mask the pain; (3) that the occupational requirements for his past jobs as a copier technician or a limo driver are within his RFC.

Przybylski criticizes the ALJ for stating that Przybylski still chooses to smoke, when he does not smoke. (Docket # 18 at 4.) The record indicates that, despite attempts to quit, Przybylski continued to suffer from nicotine addiction and smoked during most of the relevant time period. (Tr. 347, 349, 350, 352, 354, 359, 429, 439, 470, 471–72, 474, 475, 477, 478, 480, 482, 483–84, 486–87, 498–99, 522, 524, 535, 538, 539, 547, 550, 554, 556.) There is no evidence in the record that Przybylski had ceased smoking by the time the ALJ issued his decision on July 27, 2017. The record indicates that Przybylski was smoking about a pack of cigarettes a day as of July 6, 2016, when he was prescribed Chantix. (Tr. 547–50.) The last

treatment note in the record, dated January 10, 2017, shows that Przybylski was continuing to receive counseling for tobacco cessation and continuing on Chantix. (Tr. 554–56.) Other than repeating references to smoking from Przybylski's medical records, the ALJ refers to Przybylski's smoking only once, in a paragraph explaining his conclusion that Przybylski is capable of light exertional work activity: "His heart disease has been generally stable for several years, despite his decision to continue smoking cigarettes." (Tr. 28.) The ALJ's main point is that Przybylski's heart disease is stable. Thus, the ALJ's beliefs about Przybylski's smoking appear to have been accurate at the time and irrelevant, and provide no basis for reversal.

Next, Przybylski argues that the ALJ wrongly stated that Przybylski walked into his doctor's office after his foot surgery saying his pain was at a 2 out of 10 and said it seemed to be healing okay with little pain, without acknowledging that he was on Oxycontin at the time to mask the pain. (Docket # 18 at 4.) It is unclear which part of the ALJ's decision Przybylski is referring to. The ALJ does note that Przybylski reported that his ankle pain was at 2 out of 10 at his last physical therapy appointment following his ankle surgery. (Tr. 27) However, the ALJ does not appear to use this as a basis for denying Przybylski's applications, so even if the ALJ misconstrued the record as demonstrating greater pain relief than Przybylski actually experienced, I see no basis for reversal on this ground.

Finally, Przybylski argues that the ALJ incorrectly found that he could return to his past jobs as a chauffeur or an office machine servicer, as the ALJ misunderstood the actual requirements of those jobs. (Docket # 18 at 4.) Przybylski explains that copier technicians must walk a lot and do frequent kneeling, squatting, bending, standing, moving, and heavy lifting. (*Id.*) He also explains that limo drivers must carry luggage on flights of stairs and take

11

long walks to and from airport baggage claims with multiple bags. (*Id.*) He explains that he had heart attacks while doing both previous jobs. (*Id.*) However, even if the ALJ erred in finding that Przybylski could perform his previous work as a chauffeur or an office machine servicer, reversal is not available on this basis because the ALJ made an alternative finding that there were other jobs in the national economy that Przybylski was able to perform. (Tr. 30–31.) Przybylski has not argued that he would be unable to perform any of those other jobs. Therefore, reversal is not available on that basis.

2.2. Inadequate Representation by Counsel

Przybylski argues for reversal on the basis that he did not have adequate representation by counsel at the administrative level. (Docket # 18 at 1–2.) Specifically, Przybylski asserts that his first law firm failed to file the initial application and the attorney failed to perform well at the hearing before the ALJ; the firm subsequently closed and transferred his case to another firm, which decided not to represent him; and he found new counsel, which helped him file this case but then told him the case was not happening, when in fact it was. (*Id.*)

Courts have consistently held that there is no ineffective assistance of counsel claim in social security appeals. *See Turner v. Berryhill*, No. 17-cv-1130, 2018 WL 6413149, at *6 (E.D. Wis. Dec. 6, 2018) (collecting cases); *see also Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017); *Comett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008); *Russell v. Chater*, 62 F.3d 1421, at *2 (8th Cir. 1995). As frustrating as his attorneys' actions apparently were to Przybylski, this court has no power to reverse the Commissioner's decision on that basis.

2.3. Adequacy of the Record

Przybylski expresses concerns about his doctors' behavior, including the unwillingness of some of them to fill out disability paperwork on his behalf. (Docket # 18 at 3.) Przybylski

avers that both his primary care doctor and his cardiologist refused to fill out disability-related paperwork because they said the Social Security Administration has its own doctors who will examine claimants. (*Id.*) However, Przybylski says he never saw an Agency doctor and only had one x-ray whose results he apparently never received.[1] (*Id.*) As Przybylski is representing himself, I will construe this broadly as a challenge to the adequacy of the medical record on which the ALJ made his decision.

The record is indeed sparse, containing just one medical opinion from a treating source, that of Przybylski's cardiologist Dr. Babak Haddadian. Dr. Haddadian submitted a short letter stating only, "From a cardiac standpoint, this patient is not disabled or limited." (Tr. 510.) Notably, there is no treating source statement from Przybylski's long-time primary care physician, Dr. Bhushan.

It is the claimant, not the ALJ, who bears the burden of supplying adequate records and evidence. *Schenk v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). While the ALJ does have a duty to make a complete record, *see Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993), the ALJ's duty to develop the record is extremely limited when the claimant is represented by counsel, as Przybylski was at the administrative level. *Nicholson v. Astrue*, 341 F. App'x 248, 253–54 (7th Cir. 2009) ("The ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.'") (citing *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)); *see also Felmey v. Colvin*, No. 13-C-219, 2013 WL 4502090,

---

[1] Przybyslki appears to have met with Dr. Kurt L. Reintjes on January 22, 2015 for an x-ray and a consultative exam. (Tr. 506–08.) The record does not indicate whether Przybylski received the results of the x-ray.

at *16 (E.D. Wis., Aug. 22, 2013) (citing *Glenn*, 814 F.2d at 391) (rejecting argument that ALJ should have asked for a treating source statement, because plaintiff was represented by counsel). Thus, the absence of treating source statements alone is not a basis for reversal here.

However, if Przybylski continues to represent himself on remand, the ALJ should discharge his or her duty to develop the record by providing all reasonable assistance to Przybylski to obtain further evidence that will aid in understanding Przybylski's limitations so his claim can be properly adjudicated.

## CONCLUSION

Przybylski argues primarily that the ALJ erred in his evaluation of Przybylski's subjective complaints. I find that the ALJ's decision is not supported by substantial evidence; thus, remand is required consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of September, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge